UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**LESLIE MILLER,**

    Plaintiff,

v.                                    Case No. 8:05-CV-2322-T-23EAJ

**JO ANNE B. BARNHART,
Commissioner of Social Security,**

    Defendant.
_____/

**FINAL ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42 United States Code, Section 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for a period of disability and supplemental security income ("SSI")under the Act.[1]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence in the record as a

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. §636(c) and Fed.R.Civ.P. 73.(Dkt. 12).

whole. See 42 U.S.C. § 405(g)(2003). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).  If there is a substantial evidence to support the Secretary's factual findings, this court may not "decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). "Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

If this court finds that the Commissioner committed an error of law, this court must remand the case to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff filed her current application for SSI benefits on February 22, 2001, alleging onset of disability as of September 29,

2

1997.[2] (T 27, 124-127) Plaintiff's SSI application was denied initially and upon reconsideration. (T 27, 97-99, 101-104) Upon Plaintiff's request, the ALJ held a hearing on October 21, 2003. (T 54-94) In a decision dated November 28, 2003, the ALJ awarded Plaintiff SSI benefits as of March 10, 2003 based on an established disability as of the same date. (T 27-38, 54-94) Plaintiff timely filed a Request for Review of the ALJ's decision challenging the benefits eligibility date as established by the ALJ. (T 625) The Appeals Council denied Plaintiff's request for review on October 10, 2005, making the ALJ's decision the final decision of the Commissioner. (T 6-9) Plaintiff filed a timely petition for judicial review of the Commissioner's decision.

At the time of the administrative hearing, Plaintiff was a thirty-five-year-old individual with an eleventh grade education and no relevant past work experience. (T 28, 59-60) She was not

---

[2] Plaintiff filed a previous application for SSI on March 9, 1999. (T 27) The claim was denied initially, upon reconsideration and, after a hearing, ALJ issued a final unfavorable decision which was not timely appealed by Plaintiff. (T 27) In the current claim Plaintiff alleges the same onset disability date as in the previous application, therefore implicitly requesting to reopen the previous application. (T 27) However, because Plaintiff failed to appeal the final decision on the previous claim, the prior case cannot be reopened pursuant to 20 C.F.R. §§404.987-404.989 and ALJ's decision dated November 21,2000 remains final and binding. (T 27) Under 20 C.F.R. §416.202(g), the date of eligibility is the date of the disability application. Plaintiff filed this application on February 22, 2001, thus this date becomes an eligibility date. Accordingly, the current review deals with the ALJ's decision determining disability as of February 22, 2001 but not prior to that date.

3

engaged in any substantial gainful activity since November 22, 2000. (T 37) Plaintiff alleges disability due to right finger amputation, asthma, and affective disorder. (T 28, 132)

After reviewing the medical records and Plaintiff's testimony, the ALJ found that Plaintiff had a history of right finger amputation with subsequent impairments to the right hand, asthma, and affective disorder, all severe impairments. (T 29-30) Based on the foregoing, the ALJ concluded that the impairments were severe within the meaning of the Social Security Regulations but not severe enough to meet or medically equal to listed impairments in Appendix 1, Subpart P, Regulation No.4. (T 30)

Moreover, the ALJ determined that prior to March 10, 2003 Plaintiff retained a residual functional capacity ("RFC") to perform a significant range of light work. (T 34) Relying on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform the following jobs in the national economy: customer service clerk, office helper, photocopy operator. (T 34) Thus, the ALJ found that Plaintiff was not disabled from the alleged onset date through March 9, 2003. (T 34) Additionally, the ALJ found that Plaintiff's allegations regarding her mental limitations were not totally credible. (T 31, 37)

Next, the ALJ reviewed Plaintiff's medical condition as of March 10, 2003 and concluded that Plaintiff's mental state significantly deteriorated as of that date. (T 35) Specifically,

4

the medical evidence showed that Plaintiff was diagnosed with schizoaffective disorder, panic anxiety attacks with agoraphobia, and had a history of polysubstance abuse in remission. (T 35)

Additionally, the ALJ determined that although Plaintiff retained the RFC to perform light work, Plaintiff had serious impairments in social and occupational functioning, and could tolerate only minimum stress. (T 36) Moreover, based on the VE's testimony, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, there were no jobs for Plaintiff in the national economy as of March 10, 2003. (T 36) Accordingly, the ALJ determined that Plaintiff was under a "disability", as defined in the Social Security Act, as of March 10, 2003 and was eligible for SSI payments based on the established disability.

Plaintiff argues that the ALJ erred in finding Plaintiff not disabled prior to March 10, 2003 by: (1) failing to find Plaintiff disabled under Listing 12.04; (2) failing to assign appropriate weight to the opinions of treating sources regarding Plaintiff's mental condition prior to March 10, 2003; and (3) improperly evaluating Plaintiff's testimony regarding her mental limitations.

The medical evidence has been summarized in the ALJ's decision and will not be repeated here except to address the issues presented.

**II.**

**A.** Plaintiff contends that the ALJ erred in failing to find Plaintiff's mental disorders as evidenced by the medical record to qualify for Listing 12.04. (Dkt. 15 at 16).

Specifically, the ALJ determined that Plaintiff was not eligible for Listing 12.04 because Plaintiff's disorder created only a moderate limitation in daily activities, social functioning, concentration, and no episodes of decompensation. (T 30-31) Therefore, since Plaintiff did not establish "marked" limitations in at least two areas of functioning, the ALJ found that Plaintiff's impairment did not meet the requirements of Listing 12.04. (T 31) In addition, medical evidence prior to March 10, 2003 indicated that Plaintiff was depressed or anxious, with restricted affect but had normal concentration and goal directed thought content. (T 32) The record also showed that Plaintiff did not experience delusions or paranoia prior to March 10, 2003. (Id.)

An initial burden of proving a disability belongs to a claimant. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "To establish the existence of a disability, the claimant must show that she has an impairment or combination of impairments that meets or exceeds the criteria in the Listing of Impairments in Appendix 1 of Subpart P of 20 C.F.R. § 404." Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990). A mental impairment is medically equivalent to a listed mental impairment if the medical findings

are at least equal in severity and duration to the listed findings. 20 C.F.R. § 404.1526.

Section 12.04 mandates a disability finding for claimants with affective disorders. 20 C.F.R. Part 404, Subpt. P. To establish an affective disorder, the evidence must show that a plaintiff suffers from a mood disturbance that affects her whole psychic life and is accompanied by full or partial manic or depressive syndrome. Meador v. Chater, 1996 U.S. Dist. LEXIS 6221 at *4-6 (M.D.N.C. Apr. 18, 1996). The requisite level of severity for Listing 12.04 is met when the requirements of both paragraphs A and B of section 12.04 are satisfied, or when the requirements of paragraph C are satisfied. Therefore, a plaintiff must first establish the existence of a depressive or manic syndrome. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.04.A. Second, plaintiff must establish that her condition results in functional limitations of a specified severity in at least two of four areas. Id. § 12.04.B.[3]

---

[3] Paragraph A pertains to medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:
a. Anhedonia or pervasive loss of interest in almost all activities; or
b. Appetite disturbance with change in weight; or
c. Sleep disturbance; or
d. Psychomotor agitation or retardation; or
e. Decreased energy; or
f. Feelings of guilt or worthlessness; or
g. Difficulty concentrating or thinking; or
h. Thoughts of suicide; or
i. Hallucinations, delusions or paranoid thinking; or

When a disability is claimed based on a mental disorder, an ALJ reviews the medical documentation of the impairment together with the degree of limitation the impairment imposes on the claimant's ability to work. <u>Williams v. Barnhart</u>, 2005 U.S. Dist. LEXIS 38124 at *30-31 (M. D. Fla. Oct. 20, 2005).  If a claimant's disorder meets or equals the listing requirement, the claimant could not reasonably be expected to engage in gainful work activity

---

2. Manic syndrome characterized by at least three of the following:
a. Hyperactivity; or
b. Pressure of speech; or
c. Flight of ideas; or
d. Inflated self-esteem; or
e. Decreased need for sleep; or
f. Easy distractibility; or
g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
h. Hallucinations, delusions or paranoid thinking;
Or
3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes) ... .   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(A).

To satisfy the required level of severity, the syndrome or syndromes set forth in paragraph A must result[] in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration ... .   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B).

A "marked limitation" under paragraph B "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C).

and becomes automatically disabled. See 20 C.F.R. §404, Subpt. P, App. 1.

To establish that Plaintiff met the criteria of Listing 12.04 during the relevant period, Plaintiff relies on the findings made by L. Leffler, M.D. ("Dr. Leffler") and Lois Corwin, an Advanced Registered Nurse Practitioner ("ARNP Corwin"). (T 325-366, 453-475, 598-624)  Plaintiff maintains that the ALJ erred in failing to consider these medical opinions that allegedly found Plaintiff suffering from impairments severe enough to meet the listing criteria. (Dkt. 15 at 16, 17)

Contrary to Plaintiff's contention, the ALJ's opinion expressly stated that the ALJ considered progress notes, examination records, and prescribed treatment notes from Suncoast Center for Community Mental Health ("Suncoast") where both Dr. Leffler and ARNP Corwin practiced. (T 29, 30) Notably, the record does not reflect any reports or specific findings made by Dr. Leffler.  Furthermore, Dr. Leffler's signature is found only on one document in the record, a Clinical Progress Note dated September 24,2001.  (T 338-341)

In addition, the ALJ is not required to consider a medical opinion of a nurse practitioner because such opinion is not an "acceptable medical source" but rather an "other source" that may be considered by the ALJ. 20 C.F.R. §404.1513.  The opinion of an "other source" is not enough to establish the existence of an

9

impairment. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004).

Moreover, in holding that Plaintiff had not met the Listing, the ALJ stated that "No treating or examining physician has mentioned findings, either singularly or in combination, equivalent in severity to the criteria of any listed impairment."[4] (T 30) Therefore, even without explicitly mentioning Dr. Leffler's or ARNP's evaluations, it is clear that the ALJ considered their opinions as well as other medical evidence in the record when deciding on the Listing eligibility.

Plaintiff further argues that the ALJ disregarded an opinion of a treating psychologist David Kazar, Ph. D. ("Dr. Kazar") and his findings of Plaintiff's significant depression levels and social isolation. (Dkt. 15 at 14, 16). The ALJ's decision, however, shows that the ALJ expressly considered Dr. Kazar's evaluations. (T 30, 32) Specifically, based on Dr. Kazar's findings, the ALJ determined that Plaintiff had alcohol and cocaine dependence in remission and a "major depressive disorder" that was recurrent but moderate. (T 30) Furthermore, the ALJ noted that Dr. Kazar measured Plaintiff's global assessment of functioning ("GAF") at 50 that

---

[4] In determining whether a plaintiff's condition meets or equals a listed impairment, it is the plaintiff's burden to produce all medical evidence and findings necessary to make this determination. Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986) (citing 20 C.F.R. §§ 404.1525, 404.1526).

10

indicated impaired daily functional level, affective impairment, significant level of depression and anxiety. (Id.) In addition, the record indicates that Dr. Kazar noted possible psychotic features in Plaintiff's behavior.(Id.) However, the ALJ also stated that Dr. Kazar found that Plaintiff had normal speech, goal oriented thought process, adequate fund of knowledge, intact remote memory, and good judgment. (T 30, 32) These findings, along with GAF scores of 50, do not meet the criteria for Listing 12.04  The GAF scores must be considered as part of the medical evidence, however, GAF scores do not have "direct correlation to the severity requirements of the mental disorder listing." Wind v. Barnhart, 133 Fed. Appx. 684, 692 n. 5  (11th Cir. 2005).  Furthermore, a low GAF does not require a disability finding.  See Seymore v. Apfel, 1997 U.S. App. LEXIS 34323 at * 5 (10th Cir. Dec. 8, 1997).  Here, Plaintiff's GAF is not in the lower part of the scale.[5]

The ALJ correctly followed the sequential evaluation process for Listing 12.04 eligibility.  First, the ALJ found that a mental impairment existed and Plaintiff suffered from an affective disorder, thus meeting the  first requirement of §12.04(A). (T 31) The ALJ then reached the second step in the evaluation process

---

[5] "The Global Assessment of Functioning (GAF) is a subjective determination based on a scale of 1-100 of the clinician's judgment of the individual's overall level of functioning." Salazar v. Barnhart, 180 Fed. Appx. 39, 48 n.4 (10th Cir. 2006). A GAF score of 50 is on the borderline between serious and moderate symptoms. Colon v. Barnhart, 424 F. Supp. 2d 805, 809 n.3 (E.D. Pa. 2006).

determining what functional limitations in Plaintiff's daily and social activities resulted from the affective disorder. (Id.) To meet the §12.04(B) requirement, Plaintiff's functional limitations had to be especially relevant to Plaintiff's ability to work. See 20 C.F.R. §404, Subpt. P, App. 1,§12.04(B).

Specifically, in performing the 12.04 Listing analysis, the ALJ considered medical evaluations performed by Robert Stainback, Ph.D. ("Dr. Stainback") and Wayne Conger, Ph.D. ("Dr. Conger") who opined that Plaintiff's affective disorder created only moderate limitations in daily activities, mild limitations in social functioning, and no episodes of decompensation, thus failing to meet the severity requirement under §12.04(B). (T 30-32, 376, 381-382, 442-443) The ALJ stated that because Plaintiff did not have marked limitations in at least two areas of functioning, as required by §12.04(B), Plaintiff did not meet the Listing requirement. (T 31).  Moreover, Plaintiff failed to meet her burden and prove by medical evidence and supporting case law that her impairments were severe enough to support the assignment of the Listing 12.04.  In fact, the record  is devoid of any medical evidence expressly indicating that Plaintiff met the Listing 12.04 requirement.  Therefore, the ALJ's decision is supported by substantial evidence in the record.

**B.**  Plaintiff also claims that the ALJ erred in disregarding opinions of treating physicians and assigning considerable weight

12

to the opinions of non-examining, reviewing state agency consultants. (Dkt. 15 at 16). Specifically, Plaintiff contends that the ALJ failed to assign a proper weight to the opinion of Dr. Kazar rendered prior to March 10, 2003. (Dkt. 15 at 16). Plaintiff further contends that the ALJ failed to include in the decision a significant portion of the medical records for the period of February 15, 2001 through March 9, 2003, thus rendering the ALJ's decision unsupported by the record. (Dkt. 15 at 15).

The ALJ considers many factors when weighing medical opinions, including the examining relationship, the treatment relationship, whether an opinion is amply supported, whether an opinion is consistent with the record, and a doctor's specialization. 20 C.F.R. § 404.1527(d). Substantial weight must be given to the opinion of a treating physician unless there is good cause to do otherwise. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d).  A treating physician's opinion can be discounted if it is unsupported by objective medical evidence, conclusory, or contrary to the evidence. Id.  The ALJ must specify the weight assigned to the treating physician's opinion or reasons declining to consider the opinion. Broughton v. Heckler, 776 F.2d 960, 961 (11th Cir. 1985).

As discussed above, the ALJ's decision expressly mentioned findings made by Dr. Kazar. (T 30, 32).  The weight  assigned to Dr. Kazar's opinion depends on the finding of whether Dr. Kazar was

a treating physician. The record indicates that Dr. Kazar saw Plaintiff for psychological evaluation only once on October 10, 2001. (T 317-320) The fact that Dr. Kazar examined Plaintiff on one occasion does not transform his status to that of a treating physician. See George v. Bowen, 692 F.Supp. 215, 219 (S.D.N.Y. 1988). Rather, Dr. Kazar appears to be a one-time examiner whose opinion does not require the same level of deference as a treating physician's opinion. As the record indicates, the ALJ considered Dr. Kazar's opinion but the ALJ was not required to assign a significant weight to that opinion. Accordingly, Plaintiff failed to demonstrate any error made by the ALJ in evaluating Dr. Kazar's medical source opinion.

Furthermore, the ALJ assigned a proper weight to the opinion of ARNP Corwin when he considered her findings under the evaluation of the Suncoast's records as discussed above.

Additionally, Plaintiff's argument regarding the ALJ's error in assigning a significant weight to the opinion of non-treating state agency consultant Dr. Conger is unfounded. The ALJ did not state in his opinion that he assigned more weight to Dr. Conger's opinion as compared to treating physicians' opinions. Rather, the ALJ compared Dr. Conger's findings to those of Dr. Stainback, another state agency consultant. (T 30) Specifically, the ALJ reasoned that because Dr. Conger had a chance to review more of Plaintiff's records than Dr. Stainback had, Dr. Conger's opinion

14

was accorded greater weight. (Id.)

Plaintiff also alleges that the ALJ did not include in the decision a significant portion of the medical records for the period of February 15, 2001 through March 9, 2003. This argument is without merit. The ALJ's opinion addressed medical findings as to Plaintiff's physical condition prior to March 10, 2003 made by Jorge Rodriguez, M.D., Firdaus Dastoor, M.D., Jim Takach, M.D., and James Green, M.D. (T 29, 32-33, 206-216, 290-295, 445-452, 296-303) Moreover, the ALJ addressed in detail Plaintiff's mental condition prior to March 10, 2003. Specifically, the ALJ considered Suncoast's medical records for the 2001 year and through October 2002. (T 29)  Also, the ALJ's decision referred to the evaluation performed on September 24, 2001 by Dr. Kazar, as well as reports made by Dr. Stainback and Dr. Conger, dated November 17, 2001 and May 7, 2002 respectively. (T 29, 30, 321-324, 441-443)

Moreover, the ALJ's finding that Plaintiff's mental condition did not render her disabled prior to March 10,2003 is supported by substantial evidence. Suncoast's records showed that Plaintiff denied mood swings and irritability, that increase in depressive symptoms was minimal, there were no suicidal or homicidal thoughts, although some difficulty falling asleep was recorded. (T 327, 336, 344, 472, 475) These records further indicated that Plaintiff had moderate functional problems and no memory impairments. (T 333) They also indicated that Plaintiff was working with Vocational

15

Rehab to try to find some employment at that time. (T 336)

Further, the ALJ expressly considered Dr. Kazar's mental status examination and noted Plaintiff's allegations of not getting along well with others but found these allegations not supported by the medical evidence. (T 31-32, 319)

Further, as noted above, the ALJ discussed medical evaluations conducted by Dr. Conger and Dr. Stainback that found only moderate functional limitations, not severe enough to render Plaintiff disabled. (T 322, 442)

Plaintiff also points out that the ALJ failed to mention Plaintiff's reports of hearing voices (auditory hallucinations) and the crying spells as evidenced by the record. (T 333, 339, 456, 465, 472) However, it is noted that the record contains Plaintiff's reports denying auditory hallucinations or stating a decrease in intensity and frequency of the hallucinations on several occasions. (T 336, 342, 350, 466)  Furthermore, hearing voices and having crying spells, as noted in the medical evaluations, did not change Plaintiff's basic diagnosis.  Thus, the ALJ's failure to expressly mention these symptoms does not indicate that the ALJ failed to consider the medical records or to sufficiently develop the record.

Based on the foregoing, the ALJ properly assigned weight to the medical opinions in the record and the ALJ's findings regarding Plaintiff's ability to work were supported by substantial evidence.

**C.**   Plaintiff next contends that the ALJ's credibility findings

16

were erroneous and not supported by the record established prior to March 10, 2003. (Dkt. 15 at 18).

Under the Eleventh Circuit's pain standard, when a plaintiff seeks to introduce his subjective pain testimony in support of his disability claim, he must show "(1) evidence of the underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Dyer,395 F.3d at 1210.  Nevertheless, the ALJ may reject testimony that meets this standard if substantial evidence supports the ALJ's decision and if the ALJ articulated explicit and adequate reasons for his decision. Id. If an ALJ rejects a claimant's testimony regarding pain, he must articulate specific reasons for doing so. Walker v. Bowen, 826 F.2d 996, 1004 (11th Cir. 1987).  Thus, an ALJ is "not bound to accept as credible" the claimant's "own testimony regarding her symptoms." Cohen v. Secretary of HHS, 964 F.2d 524, 529 (6th Cir. 1992). Moreover, "the ALJ's credibility determinations are entitled to great weight." Id.

The ALJ considered medical opinions concerning Plaintiff's mental limitations which concluded that Plaintiff's affective disorder, as evidenced by depressed and anxious mood, caused moderate limitations in the Plaintiff's daily activities, cognitive

17

capacity, concentration, and social functioning. (T 319, 321-22, 381-82, 441-42, 449) The ALJ found that Plaintiff's "mood was depressed to anxious and affect was restricted. However, attention and concentration were generally normal.  There were no delusions or paranoid thoughts. Judgment was normal and insight was fair. The claimant admitted that her symptoms decreased with medication." (T 31-32) Based on the foregoing, the ALJ concluded that Plaintiff's subjective complaints regarding her mental limitations were not generally credible. (T 31, 37)

Plaintiff testified that she generally did not leave the house except to go to doctor appointments, did not get out of bed during the day because she did not want to be bothered, and she also did not want to be bothered by anyone, lost track in conversations with other people,  her mind wondered easily, and she got distracted very easily. (T 161-163) On the other hand, Plaintiff stated that she did get along with the public, generally got along well with friends and family, and sometimes with authorities. (T 162, 170) Plaintiff indicated that she was able  sometimes to follow spoken instructions depending on whether she was functioning normally or did not care. (T 171) Also, Plaintiff stated that she was able to manage her own money, perform household chores when in the mood, and  prepare regular meals even though her ability to prepare meals changed because sometimes she did not care. (T 168-170)

After evaluating the record, the ALJ concluded that

Plaintiff's testimony as to her mental condition was not totally credible because medical evaluations found Plaintiff's fund of knowledge was adequate, remote memory was intact, judgment was good, insight was fair and Plaintiff admitted her symptoms decreased with medication. (T 31, 32) The ALJ further noted that Plaintiff's feelings of paranoia were not documented until March 10, 2003.[6]  (Id.)  Finally, the ALJ noted Plaintiff's written statements that she was able to prepare meals, shop, perform household chores, and drive.  (Id.)

Except for the ALJ's findings regarding Plaintiff's feelings of paranoia, Plaintiff does not challenge the other findings underlying the ALJ's credibility determination as unsupported in the record.  Plaintiff cites evidence that paranoia was first documented on September 24, 2001  (T 339) and that on October 15, 2002 Plaintiff heard voices saying that someone was coming to kill her. (T 458) While these assertions are supported by the pages cited, the AlJ's overall assessment of Plaintiff's credibility remains supported by substantial evidence.  Therefore the ALJ's error in finding an absence of reference to paranoia prior to March 10, 2003 does not vitiate the ALJ's other findings which are supported by the record.  Substantial evidence supports the ALJ's

---

[6] Due to Plaintiff's significant deterioration in her mental condition after March 10, 2003, as evidenced by a psychiatric evaluation and two Baker Act hospital admissions, the  ALJ found Plaintiff unable to work after that date based on the ALJ's RFC assessment and the testimony of a vocational expert.  (T 35-36)

19

determination that Plaintiff's testimony as to her medical condition was not fully credible. See <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1202-03 (11th Cir. 1989).

### CONCLUSION

Accordingly and upon consideration, it is **ORDERED** that:

(1) the decision of the Commissioner denying benefits prior to March 10, 2003 be **AFFIRMED**; and

(2) the Clerk of Court shall enter judgment in favor of Defendant and close the file, with fees and expenses to be borne by each party.

**DONE AND ORDERED** in Tampa, Florida on this 28th day of November, 2006.

ELIZABETH A JENKINS
United States Magistrate Judge